

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00364-CV

_____

IN RE: THE COMMITMENT OF JEFFERY LEE STODDARD

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. D371-S-13391-16

Concurring and Dissenting Opinion by Justice Walker

## CONCURRING AND DISSENTING MEMORANDUM OPINION

I concur with the majority opinion's holding that the evidence presented at Appellant Jeffrey Lee Stoddard's trial for civil commitment as a sexually violent predator (SVP) is legally sufficient to support the jury's unanimous finding that Stoddard is a SVP. I dissent from the majority opinion's holding that the evidence is factually insufficient to support the jury's unanimous finding that Stoddard is a SVP. *See* Tex. Health & Safety Code Ann. § 841.003 (West 2017).[1]

A person is a SVP under the SVP Act if the person (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). The majority opinion agrees that the evidence is factually sufficient to establish Stoddard meets the first prong of the statutory definition of a SVP—that he is a "repeat sexually violent offender" because of his two 2004 convictions from Tarrant County for aggravated sexual assault of a child under fourteen years of age.[2] *See id.* § 841.003(a)(1). The majority reverses the jury's verdict and the judgment finding Stoddard to be a SVP based on the alleged factual insufficiency of the evidence to meet the second prong of the statutory definition of a SVP—that Stoddard suffers from a behavioral

---

[1]Under the SVP Act, if a judge or jury determines that a person is a SVP, the judge must commit the person for treatment and supervision by the Texas Civil Commitment Office. Tex. Health & Safety Code Ann. § 841.081 (West 2017).

[2]Stoddard also had a conviction for possession of child pornography.

abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a)(2).

The terms "behavioral abnormality" and "predatory act" are defined in the SVP Act. *See id.* § 841.002(2) (West 2017) (defining behavioral abnormality), .002(5) (defining predatory act). Under the definitions provided in the SVP Act, a behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). A "[p]redatory act" is defined by the SVP Act as "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

The court's charge to the jury incorporated, verbatim, these statutory definitions. It provided,

> The question you will answer in this case is, "Do you find beyond a reasonable doubt that JEFFERY LEE STODDARD is a sexually violent predator?"
>
> You are instructed that a person is a **"Sexually Violent Predator"** for the purposes of Chapter 841 of the Texas Health and Safety Code if the person:
>
> > 1. is a repeat sexually violent offender; and
> > 2. suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.
>
> A person is a **"repeat sexually violent offender"** for the purposes of Chapter 841 of the Texas Health and Safety Code if the person is

convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses.

**"Behavioral Abnormality"** means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.

**"Predatory Act"** means an act directed toward individuals, including family members, for the primary purpose of victimization.

**"Sexually violent offense"** means any of the following offenses:

1. Continuous sexual abuse of a young child or children;
2. Indecency with a child by sexual contact;
3. Sexual assault;
4. Aggravated sexual assault;
5. Aggravated kidnapping, if the person committed the offense with the intent to violate or abuse the victim sexually;
6. Burglary of a habitation, if the offense is [a] first-degree felony and the person committed the offense with the intent to commit:
   a. Continuous sexual abuse of a young child or children;
   b. Indecency with a child by sexual contact;
   c. Sexual assault;
   d. Aggravated sexual assault; or
   e. Aggravated kidnapping, if the person committed the offense with the intent to violate or abuse the victim sexually;
7. Murder or capital murder that is determined beyond a reasonable doubt to have been based on sexually motivated conduct;
8. Attempt, conspiracy, or solicitation to commit any of the offenses listed above; or
9. An offense under prior state law that contains elements substantially similar to the elements of the offenses listed above.

Question one asked the jury:

Do you find beyond a reasonable doubt that JEFFERY LEE STODDARD is a sexually violent predator?

NO _____

YES _____

After hearing the evidence presented at Stoddard's commitment trial, the jury unanimously answered "yes," finding beyond a reasonable doubt that Stoddard was a SVP.

In reviewing a challenge to the factual sufficiency of the evidence to support an order of civil commitment as a SVP, we apply the factual sufficiency standard of review previously applied in criminal cases. *In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.) (explaining that the Beaumont Court of Appeals had done so and that "[w]e therefore will too").[3]   That is, we determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof is so obviously weak as to undermine confidence in the jury's determination, or the proof, although adequate if taken alone, is greatly

_____

[3]The Beaumont Court of Appeals explained that intermediate appellate courts bear a constitutional duty to review challenges to the factual sufficiency of the evidence in civil cases, such as this one, because the Texas Supreme Court cannot and explained that, because the State bears the burden of proving the requisites for civil commitment as a SVP *beyond a reasonable doubt*, the general civil factual sufficiency standard is not appropriate. *See In re Commitment of Day*, 342 S.W.3d 193, 206–13 (Tex. App.—Beaumont 2011, pet. denied).

outweighed by contrary proof. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000), *overruled by Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010).

Only two witnesses testified at Stoddard's commitment trial: Dr. Tim Proctor and Stoddard. The following evidence was presented to the jury. Proctor testified for the State. Proctor is board-certified in psychology, possesses a bachelor's degree in psychology, possesses a Ph.D. in clinical psychology from the University of Texas Southwestern Medical Center, and has completed a postdoctoral fellowship in forensic psychology from the University of Southern California Institute of Psychiatry and Law in Los Angeles and a two-year postdoctoral program at Texas A&M in psychopharmacology. The State walked Proctor through the SVP Act's definitions of "behavior abnormality" and "predatory act" and the meaning of the statutory requirement that, to be committed as a SVP, the behavioral abnormality the person suffers from must make the person "likely"—which Proctor explained is not a precise, percentage-point prediction but rather a "qualitative opinion about where someone's risk is"—to engage in a predatory act of sexual violence.

Proctor testified that he had conducted a two-hour interview of Stoddard and had reviewed Stoddard's deposition, police reports regarding Stoddard, records about Stoddard's criminal offenses, records from the prison system, other psychological evaluations Stoddard has been involved in, victim statements, witness statements, and the actual child pornography Stoddard was previously convicted of possessing. The records Proctor reviewed "go back and talk about [Stoddard], I mean, really all the

6

way basically to birth. I mean, they mentioned his childhood and his education, and all that." Proctor explained that—based on his education, training, and experience; the materials, documents, and other evaluations of Stoddard that he had reviewed; and his interview of Stoddard—he had formed the opinion that Stoddard suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

One of the prior psychological evaluations reviewed by Proctor was made by Dr. Varela; Dr. Varela also had concluded that Stoddard suffered from a behavior abnormality.

Proctor testified that Stoddard was not a typical sex offender because his sexual offense history involves multiple sex offense convictions, multiple victims, and also child pornography. Proctor explained that Stoddard has pedophilia—meaning that he is attracted to prepuberty children—and has a lot of antisocial and psychopathic traits, which means he breaks rules; does not follow through with obligations; and does things that are impulsive, aggressive, and dishonest. Proctor explained that Stoddard has a significant history of substance abuse, particularly marijuana and cocaine.

Proctor explained that to understand how a person will conduct himself going forward in the future, i.e., his risk of reoffending, one has to delve into the person's past conduct. He testified that there are two main risk factors pertinent to Stoddard's behavior abnormality and that Stoddard possesses both of them:

One is some type of sexual deviance. In this case[] pedophilia[,] or [Stoddard is] sexually interested children that are prepuberty. So we're not talking about teenagers here. . . . And then the second is an antisocial lifestyle[,] [which involves] breaking rules, being unstable, being impulsive. . . . When you have both of those, you've got two of the -- of the most important general risk factors for reoffending.

Concerning Stoddard's other behaviors demonstrating a likelihood that he will reoffend—that is, in addition to his sexual deviance of pedophilia, his antisocial and psychopathic traits, and his significant history of substance abuse—Proctor testified that Stoddard had exhibited the following:

- A risk of reoffending based on his highly unstable employment history.

- A risk of reoffending based on his lack of a support system.

- A risk of reoffending based on his prior arrests for assaultive conduct.

- A risk of reoffending because a sex offender that has committed an offense on an unrelated male victim, like Stoddard has, possesses a higher risk of reoffending.

- A risk of reoffending because Stoddard engaged in grooming or escalation, where his conduct with the victim escalated; Stoddard first showed seven-year-old Alice pornographic movies, and he then exposed her to sex and engaged in sexual activity with her. Stoddard had Alice perform sex on him, including ejaculating into her mouth, approximately ten or eleven times. Stoddard required Alice to perform oral sex on him in exchange for food after she said she was hungry. He fondled her sexual parts, made her fondle him, and attempted anal sex with her.

- A risk of reoffending because Stoddard began sexually assaulting the seven-year-old female about one month after he began living in her home. Proctor said the speed with which Stoddard began his pedophilic acts against the seven-year-old female was "certainly concerning."

8

- A risk of reoffending because, as we set forth below, Stoddard's version of the events differed so dramatically from the victims' versions; Proctor explained that these discrepancies demonstrated denial and minimization of the offenses by Stoddard, which is an assessment measure that shows a risk of reoffending.

- A risk of reoffending based on the "persistence" of Stoddard's interest in child pornography.

- A risk of reoffending because Stoddard failed to demonstrate remorse for his offenses or empathy with his victims.

- A risk of reoffending based on Stoddard's lack of progress in the sex offender treatment program (SOTP).

- A risk of reoffending based on Stoddard's above-average risk range on the Static-99 test.

Stoddard's version of the events was that seven-year-old Alice had told him she wanted to watch pornographic movies; that he caught her and her brother Bobby engaging in sexual conduct and told them to stop; and that she was jumping on the bed naked, causing him to be sexually attracted to her the first time anything happened.

Stoddard testified at trial that he is at risk for reoffending, that he still believes seven-year-old Alice wanted to have sex with him, that he does not know why he engaged in oral sex with Alice while knowing it was wrong, and that his sexual attraction to children is an ongoing disease. Conversely, Stoddard testified that he is not attracted to children, and he denied committing any offense against Bobby, despite his guilty plea to the offense.

9

Having conducted a neutral review of all of the evidence, both for and against the jury's affirmative finding that Stoddard met the second statutory prong required for the jury to find that he is a SVP under section 841.003(a)(2), my review of the evidence does not demonstrate that the proof that Stoddard suffers from a behavioral abnormality (an "acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person") that makes him likely to engage in a predatory act ("an act directed toward individuals, including family members, for the primary purpose of victimization") of sexual violence is so obviously weak as to undermine confidence in the jury's affirmative finding, nor is the proof that Stoddard is a SVP greatly outweighed by contrary proof.

Accordingly, I would hold that factually sufficient evidence exists to support the jury's finding that Stoddard meets the statutory definition of a SVP, including the second prong—that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Short*, 521 S.W.3d 908, 919 (Tex. App.—Fort Worth 2017, no pet.) (holding evidence factually sufficient to support jury's SVP finding); *Dever*, 521 S.W.3d at 88 (same); *Day*, 342 S.W.3d at 217 (holding evidence factually sufficient based on experts' conclusions that appellant was at risk to reoffend).

10

I would therefore overrule Stoddard's second issue and resolve his third issue regarding whether the trial court abused its discretion by prohibiting discussion of his parole prerequisite that required him to complete the SOTP before he would be released on parole. Because the majority opinion does not,[4] I respectfully dissent.

/s/ Sue Walker

Sue Walker
Justice

Delivered: September 27, 2018

---

[4]In my view, the majority opinion unnecessarily and too heavily relies upon legislative findings made approximately twenty years ago in connection with the enactment of the SVP Act in 1999. The legislature's finding twenty years ago—that at that time, the size of the group of SVPs was "small"—does not preclude, in my view, application of the SVP Act to a group that, unfortunately, has grown larger since 1999. Because Stoddard was civilly committed under the Texas SVP Act, I also see no reason for a discussion—albeit well-written and interesting—of out-of-state laws and statewide statistics.